# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

**CHRISTOPHER D. DYAL,**

      Plaintiff,

**v.**                                                          **Case No: 5:17-cv-377-Oc-34PRL**

**C. LEE, C. D. DRIGGERS, E. LAW,**
**FNU EINING and E.R. CUMMINGS,**

      Defendants.

_____

## <u>ORDER</u>

### I. Status

Plaintiff Christopher Dyal, an inmate of the Florida Department of Corrections, initiated this action on August 14, 2017, by filing a Civil Rights Complaint (Complaint; Doc. 1) pursuant to 42 U.S.C. § 1983. He filed an Amended Complaint (Amended Complaint; Doc. 17) on December 5, 2017. In the Amended Complaint, Dyal names the following Defendants: (1) S.B. Rossitier, the warden at Marion Correctional Institution (MCI); (2) Jeffery Howell, the assistant warden at MCI; (3) C. Lee, a lieutenant at MCI; (4) C.D. Driggers, a sergeant at MCI; (5) E. Law, a sergeant at MCI; (6) D. Eining, a correctional officer at MCI; and (7) E.R. Cummings, a classification officer at MCI.[1] He asserts that Defendants violated his federal constitutional rights when they retaliated against him after finding grievances and legal work during a search of his property. Dyal claims that Defendants have threatened him, subjected him to additional searches, read his legal work and grievances, removed his religious items, and filed a disciplinary report

---

[1] On January 9, 2018, the Court dismissed Defendants S.B. Rossitier and Jeffery Howell for Plaintiff's failure to state a claim against them. (Order; Doc. 18).

containing false information. As relief, Dyal seeks a declaration that his civil rights were violated, a preliminary and permanent injunction "ordering defendants named in this motion to be set forth by this honorable Court,"[2] along with compensatory, punitive and nominal damages.

Before the Court are two motions to dismiss, Defendants' Eining, Cummings, Law, and Driggers' Motion to Dismiss Plaintiff's Amended Complaint with Prejudice and Memorandum of Law (Joint Motion; Doc. 32), filed on April 30, 2018, and Defendant C. Lee's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice and Memorandum of Law (Lee Motion; Doc. 58), filed on August 30, 2018. Plaintiff filed responses in opposition to the Joint Motion, see Formal Opposition to Defendant's [sic] Motion for Dismissal Rule 12(b) Fed. R. Civ. P. (Response I; Doc. 39) and the Lee Motion, see Official Response to Motion to Dismiss (Response II; Doc. 61). With leave of Court, see Orders (Doc. 43 and 54), Defendants Eining, Cummings, Law, and Driggers filed a Reply to Plaintiff's Response in Opposition to Defendants' Motion to Dismiss (Reply; Doc. 51) and Plaintiff filed a Reply to Defendant's [sic] Reply (Sur-reply; Doc. 57). Additionally, Plaintiff filed a Motion to Set Aside Portions of Claim that Fall Under "Heck" Doctrine (Motion to Set Aside; Doc. 62). Accordingly, the motions are ripe for review.

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must

---

[2] On January 9, 2018, the Court denied Dyal's claims for preliminary and permanent injunctions. See Order at 6.

still meet some minimal pleading requirements. <u>Jackson v. Bellsouth Telecomm.</u>, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (per curiam) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (internal quotations omitted); <u>see also</u> <u>Jackson</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>See</u> <u>Iqbal</u>, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as <u>de</u> <u>facto</u> counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" <u>Alford v. Consol.</u>

<u>Gov't of Columbus, Ga.</u>, 438 F. App'x 837, 839 (11th Cir. 2011)[3] (quoting <u>GJR Invs., Inc. v. Cty.</u> <u>of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), <u>overruled in</u> <u>part on other grounds as recognized in</u> <u>Randall</u>, 610 F.3d at 706).

### III. Amended Complaint[4]

In his Amended Complaint, Dyal is pursuing claims for alleged constitutional violations pursuant to 42 U.S.C. § 1983. Specifically, he asserts violations of his First, Fifth, Eighth, and Fourteenth Amendment rights under the United States Constitution. <u>See</u> Amended Complaint at 3. Dyal's claims arose during his incarceration at MCI.

On May 11, 2017, Officer Eining conducted a search of Dyal's property and discovered grievances and legal work, prompting him to tell Dyal that officers and staff did not tolerate inmates writing grievances. <u>Id.</u> at 61-62. Dyal states that Eining's "threats" violated his due process rights and attempted to hinder his writing and filing of grievances and legal work. <u>Id.</u> at 14, 23, 26. Dyal also asserts that this search by Eining led to a search of his cell on the following day by Officers Driggers, Law and Lee. <u>Id.</u> at 14.

According to Dyal, Defendants Driggers, Law, and Lee searched his cell on May 12, 2017 in retaliation for his filing grievances and legal documents. <u>Id.</u> at 14-15. As part of the search, Dyal

---

[3] "Although an unpublished opinion is not binding . . . , it is persuasive authority." <u>United</u> <u>States v. Futrell</u>, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[4] In considering a motion to dismiss, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. <u>Miljkovic v. Shafritz</u> <u>and Dinkin, P.A.</u>, 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Amended Complaint and may differ from those that ultimately can be proved. Additionally, because this matter is before the Court on motions to dismiss filed by Defendants Eining, Cummings, Law, Driggers, and Lee, the Court's recitation of the facts will focus on Dyal's allegations as to these Defendants.

claims that Defendants Driggers, Law, and Lee read his grievance forms and his "law work" and confiscated those documents and various religious items. Id. at 15-17, 20. Dyal further alleges that Defendant Driggers filed a false disciplinary report containing false information that Dyal possessed a weapon. Id. at 17-18. Officer Cummings found Dyal guilty of the disciplinary violation on May 23, 2017, and sentenced Dyal to twelve days in confinement. Id. at 8. Officer Cummings also allegedly threatened Dyal that he could be transferred if he continued to file grievances. Id.

Dyal complains that the confinement cell to which he was transferred was overrun with ants, had brown water coming out of the sinks, and had windows that would not open causing the walls to be covered with mold. Id. at 18-19. Dyal asserts that this confinement constituted cruel and unusual punishment in violation of his Eighth Amendment rights, which caused pain and suffering that permanently injured him and subjected him to a "major risk to future injury." Id. at 19-20, 22, 25.

Dyal also states that he lost twenty days of gain time causing "substantial injuries." Id. at 22-23. He contends that the Defendants' actions caused him to "have to remain as a minimum custody inmate on a close custody compound" where he was at risk of major danger from high custody inmates, and was unable to have a paying job. Id. at 19-20, 23-24.

Additionally, Dyal alleges that Defendant Lee violated his Eighth Amendment rights on May 12, 2017, with a wanton infliction of unnecessary pain and excessive force that violated his rights against cruel and unusual punishment by "handcuffing, shackling, and snatching around also slaps to the face and spitting at the plaintiff." Id. at 17, 21. Dyal asserts he suffered injuries which were recorded by medical staff on May 13, 2017, and that he had "pain and suffering for approximately 30 days." Id. at 22, 25.

## IV. Summary of the Arguments

In the Joint Motion, Defendants assert that the Court should dismiss the case because Dyal fails to: (1) state a claim of retaliation against Eining, <u>see</u> Joint Motion at 5-7; (2) state First and Eighth Amendment claims against Cummings, <u>see</u> <u>id.</u> at 7-9; (3) state First Amendment exercise of religion and retaliation claims against Law and Driggers, <u>see</u> <u>id.</u> at 9-10; (4) state a retaliation claim against Driggers related to the filing of a disciplinary report, <u>see</u> <u>id.</u> at 10-11; (5) state an Eighth Amendment claim related to prison conditions, <u>see</u> <u>id.</u> at 11-12; and (6) state a claim of denial of access to the courts, <u>see</u> <u>id.</u> at 12-13. Additionally, Defendants maintain that Dyal is not entitled to compensatory or punitive damages under 42 U.S.C. § 1997e(e) because he has not alleged any physical injuries resulting from Defendants' acts and/or omissions, <u>see</u> <u>id.</u> at 13-14. Finally, Defendants maintain that they are entitled to qualified immunity and that Dyal's claims regarding the disciplinary report and the subsequent confinement and loss of gain time are barred by the <u>Heck</u>[5] doctrine, <u>see</u> <u>id.</u> at 15-18. In his motion, Defendant Lee raises arguments similar to those in the Joint Motion, stating that Dyal has failed to state First, Fifth, Eighth, and Fourteenth Amendment claims against him. <u>See</u> Lee Motion at 6-16. Additionally, Lee maintains that Dyal failed to exhaust his administrative remedies as to his excessive force claim. <u>See</u> <u>id.</u> at 17-18.

In response to the Joint Motion, Dyal maintains that (1) he has sufficiently plead his claims, <u>see</u> Response I at 2-9, 11-13; (2) the <u>Heck</u> doctrine does not apply to his claims, <u>see</u> <u>id.</u> at 10; and (3) Defendants are not entitled to Eleventh Amendment immunity, <u>see</u> <u>id.</u> at 10-11. In response to the Lee Motion, Dyal argues that he has plead sufficient facts to support each of his claims. <u>See</u> Response II. As such, Dyal requests that the Court deny both motions.

---

[5] <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).

# V. Discussion

## A. Exhaustion of Administrative Remedies

### 1. Exhaustion under the PLRA

Exhaustion of available administrative remedies is required before a 42 U.S.C. § 1983 action with respect to prison conditions may be initiated by a prisoner. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner such as Dyal is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); Jones, 549 U.S. at 211; Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted). Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[6] 286 F.3d, at 1024. . . .

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. As such, the United States Supreme Court has emphasized:

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit

---

[6] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

> to § 1997e(a)'s mandate is the one baked into its text: An inmate
> need exhaust only such administrative remedies as are "available."

Ross v. Blake, 136 S. Ct. 1850, 1862 (2016).

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant, 530 F.3d at 1374. The Eleventh Circuit has explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file
> suit under § 1983. In response to a prisoner suit, defendants may
> bring a motion to dismiss and raise as a defense the prisoner's failure
> to exhaust these administrative remedies. See Turner, 541 F.3d at
> 1081.[7] In Turner v. Burnside we established a two-step process for
> resolving motions to dismiss prisoner lawsuits for failure to exhaust.
> 541 F.3d at 1082. First, district courts look to the factual allegations
> in the motion to dismiss and those in the prisoner's response and
> accept the prisoner's view of the facts as true. The court should
> dismiss if the facts as stated by the prisoner show a failure to
> exhaust. Id. Second, if dismissal is not warranted on the prisoner's
> view of the facts, the court makes specific findings to resolve
> disputes of fact, and should dismiss if, based on those findings,
> defendants have shown a failure to exhaust. Id. at 1082–83; see also
> id. at 1082 (explaining that defendants bear the burden of showing
> a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).

## 2. Exhaustion under Florida's Prison Grievance Procedure

The Florida Department of Corrections (FDOC) provides an internal grievance procedure for its inmates. See FLA. ADMIN. CODE r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential

---

[7] Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008).

process. First, an inmate must submit an informal grievance to a designated staff member at the institutional level. See FLA. ADMIN. CODE r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See FLA. ADMIN. CODE r. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the FDOC. See FLA. ADMIN. CODE r. 33-103.007.

However, under specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See FLA. ADMIN. CODE r. 33-103.005(1); 33-103.006(3). Or, an inmate can completely bypass the institutional level and proceed directly to the Office of the Secretary of the FDOC by filing a "direct grievance." See FLA. ADMIN. CODE r. 33-103.007(6). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the Secretary. See FLA. ADMIN. CODE r. 33-103.007(6)(a). In a direct grievance to the Secretary, the inmate "must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution or facility . . . ." FLA. ADMIN. CODE r. 33-103.007(6)(a)2. If the Secretary determines that the grievance does not qualify as one of the types of direct grievances described in the rule, the grievance must be returned to the inmate, stating the reasons for its return and advising the inmate to resubmit the grievance at the appropriate level. See FLA. ADMIN. CODE r. 33-103.007(6)(d). If the grievance is returned to the institution or facility for further investigation or a response, the inmate may, after receiving the response, re-file with the Secretary if he is not satisfied with the response. See FLA. ADMIN. CODE r. 33-103.007(7).

Florida Administrative Code Rule 33-103.011 provides time frames for submission of grievances. Generally, the following time limits are applicable. Informal grievances must be

received within twenty days from the date on which the incident or action that is the subject of the grievance occurred. See FLA. ADMIN. CODE r. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See FLA. ADMIN. CODE r. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the Secretary must be received within fifteen days from the date the response to the formal grievance is returned to the inmate. See FLA. ADMIN. CODE r. 33-103.011(1)(c). Additionally, Rule 33-103.011(4) provides:

> The time limit for responding to grievances and appeals may be extended for a reasonable period agreeable to both parties if the extension is agreed to in writing by the inmate. Unless the grievant has agreed in writing to an extension, expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process. If this occurs, the complainant must clearly indicate this fact when filing at the next step. If the inmate does not agree to an extension of time at the central office level of review, he shall be entitled to proceed with judicial remedies as he would have exhausted his administrative remedies. The Bureau of Policy Management and Inmate Appeals will nevertheless ensure that the grievance is investigated and responded to even though an extension has not been agreed to by the inmate.

FLA. ADMIN. CODE r. 33-103.011(4).

According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more ... conditions are found to exist." FLA. ADMIN. CODE r. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See FLA. ADMIN. CODE r. 33-103.014(1)(a)-(x). Some of the reasons for returning a grievance are as follows: the grievance "addresses more than one issue or complaint" or "is so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to" or "is not written legibly and cannot be clearly understood" or is a

supplement to a previously-submitted grievance that has been accepted for review; and the inmate "did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable," or "used more than two (2) additional narrative pages." See FLA. ADMIN. CODE r. 33-103.014(1)(a), (b), (c), (f), (q), (t).

### 3. Dyal's Exhaustion Efforts

Defendant Lee claims that Dyal has failed to exhaust his administrative remedies regarding the specific claim of excessive force against Defendant Lee. See Lee Motion at 17-18. Dyal attached copies of various grievance forms to his Amended Complaint. See Amended Complaint at 29-70. A review of the grievances reflects that on May 14, 2017, Dyal signed an Inmate Request Form (#304-1705-103) alleging excessive force by Defendant Lee:

> This grievance is against the violation of my civil rights by the fact of excessive force by Lt. Lee of Marion Work Camp. On 5/12/17 I was placed into custody by Lt. Lee. I have wounds on my ankles and left wrist were [sic] my cuffs were intentionally put on to [sic] by Lt. Lee. My medical records can be viewed to show the proof of these wounds. Then Lt. Lee became irate when I informed him that I was threatend [sic] by a [sic] officer the prior day, his response was this is what happens when you write up officers.

Id. at 54. The form was received on May 15, 2017, and was responded to on May 19, 2017. Id. The response notes that Defendant Lee denies Dyal's allegations, but an incident report will be generated and forwarded for further investigation. Id. The informal grievance was marked as approved. Id.

On May 14, 2017, Dyal also signed a grievance (#1705-304-055) that was sent to the Warden of Marion C.I. regarding his allegations of excessive force by Defendant Lee. Id. at 53. On May 30, 2017, the grievance was returned without processing for failure to comply with Chapter 33-103.014(1)(g) and (f). Id. at 52. On June 5, 2017, Dyal signed an administrative appeal (#17-6-23637) that was sent to the Secretary of the Department of Corrections. Id. at 51. The

administrative appeal was returned without action for failure to comply with the grievance requirements at the institutional level. Id. at 50.

Defendant Lee is correct that Dyal failed to exhaust grievance #1705-304-055. However, because the informal grievance (#304-1705-103) was approved, Dyal did exhaust his administrative remedies regarding the issue of excessive force by Defendant Lee. As such, to the extent Lee seeks dismissal on the basis of Dyal's alleged failure to exhaust the excessive force claim, the Lee Motion is due to be denied.

## B. Eighth Amendment Claims

## 1. Excessive Use of Force Claim

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Additionally, the Eleventh Circuit requires "'an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). In the absence of a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

With respect to the appropriate analysis in an excessive use of force case, the Eleventh Circuit has explained:

> [O]ur core inquiry is "whether force was applied in a good-faith
> effort to maintain or restore discipline, or maliciously and
> sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 112

S. Ct. 995, 999, 117 L.Ed.2d 156 (1992). In determining whether force was applied maliciously and sadistically, we look to five factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates[, as reasonably perceived by the responsible officials on the basis of facts known to them]..." Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations omitted).[8]

McKinney v. Sheriff, 520 F. App'x 903, 905 (11th Cir. 2013) (per curiam). "When considering these factors, [courts] 'give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance.'" Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam) (quoting Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007)).

"The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (internal quotations and citations omitted). Indeed, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9 (citation omitted). Notably, a lack of serious injury is relevant to the inquiry. See Smith v. Sec'y, Dep't of Corr., 524 F. App'x 511, 513 (11th Cir. 2013) (per curiam) (quoting Wilkins v. Gaddy, 559 U.S. 34, 38 (2010)). The United States Supreme Court explained.

"[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." Ibid. (quoting Whitley, supra,

---

8 See Whitley v. Albers, 475 U.S. 312, 321 (1986).

at 321, 106 S. Ct. 1078).[9] The extent of injury may also provide some indication of the amount of force applied. As we stated in <u>Hudson</u>, not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9, 112 S. Ct. 995. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition <u>de minimis</u> uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." <u>Id.</u>, at 9-10 (some internal quotation marks omitted). An inmate who complains of a "'push or shove'" that causes no discernible injury almost certainly fails to state a valid excessive force claim. <u>Id.</u>, at 9 (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973)).[10]

Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

<u>Wilkins</u>, 559 U.S. at 37-38.

Defendant Lee seeks dismissal of Dyal's Eighth Amendment claim against him, arguing that Dyal fails to provide sufficient facts to state a plausible claim for relief. <u>See</u> Lee Motion at 9-13. In the Amended Complaint, Dyal asserts Lee subjected him to excessive force by "handcuffing, shackling, and snatching around also slaps to the face and spitting at the Plaintiff." Amended Complaint at 17, 21. He states that he suffered injuries and had "pain and suffering for approximately 30 days." <u>Id.</u> at 22, 25. In the grievance documents attached to the Amended

---

[9] <u>Whitley v. Albers</u>, 475 U.S. 312, 321 (1986).

[10] <u>See</u> <u>Johnson</u>, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

Complaint, Dyal alleged that Defendant Lee committed excessive force by placing him in handcuffs and shackles to be transported to confinement for possession of a weapon that caused wounds to his "wrists and ankles," see id. at 51, and to his "ankles and left wrist," see id. at 53. Given these allegations, Dyal has failed to state a constitutional violation under the Eighth Amendment related to the handcuffing and shackling.[11] Further, Dyal's claims regarding "slaps to the face and spitting" neither state a constitutional violation under the Eighth Amendment as he has not alleged to have suffered any injury, nor are they exhausted. Therefore, Dyal has failed to state a claim of excessive force against Defendant Lee.

### 2. Prison Conditions

To the extent that Dyal asserts that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment, the Eleventh Circuit has explained the requirements for an Eighth Amendment violation. "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones ...." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotation marks and citation omitted). At a minimum, the Eighth Amendment requires prison officials to provide adequate food, clothing, shelter, and medical care. Id. An inmate's safety must also be protected through reasonable measures. Id. The prisoner bears the burden of proving that the challenged prison condition is "extreme" and "pose[s] an unreasonable risk of serious damage to

---

[11] See Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000) (reversing district court's denial of qualified immunity in case involving handcuffing that resulted in bruising for which medical treatment was not sought, finding that minimal amount of force and injury did not overcome such immunity); Gold v. City of Miami, 121 F.3d 1442, 1446 (11th Cir. 1997) (reversing denial of qualified immunity where plaintiff experienced pain from handcuffs for twenty minutes but suffered only skin abrasions for which he did not seek treatment); Stephens v. Broward Sheriff's Office, 84 F. Supp. 3d 1327, 1338 (S.D. Fla. 2014) (finding force de minimis where defendant shoved the plaintiff causing his head and neck to strike the car, twisted the plaintiff's hand back and then tightly handcuffed the plaintiff, causing the plaintiff to lose the feeling in his hands, and the defendant did not adjust the handcuffs for almost three hours).

the [prisoner's] future health or safety." <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotation marks and citation omitted). In order to violate the Eighth Amendment, the risk of harm from the condition must be "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." <u>Id.</u>

Further, the prisoner must satisfy a subjective prong by showing that the prison officials acted with deliberate indifference. <u>Id.</u> It is not required that the prison official purposefully acted to cause harm, but it does involve something beyond mere negligence. <u>Id.</u> The prison official must know of and disregard an "excessive risk to inmate health or safety." <u>Farmer</u>, 511 U.S. at 837. In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." <u>Id.</u> A prison condition generally does not violate the Eighth Amendment unless it involves "the wanton and unnecessary infliction of pain." <u>Chandler</u>, 379 F.3d at 1289 (quotation marks and citation omitted).

Dyal alleges that he spent twelve days in a cell that was overrun with ants, had brown water coming out of the sinks, and windows that would not open causing walls to be covered with mold. Amended Complaint at 18-19. Other than a few ant bites, Dyal has not asserted that he suffered any physical injury during those twelve days. Further, Dyal fails to set forth any facts even suggesting that any of the named defendants were aware of the conditions of which he complains. Therefore, Dyal has failed to state an Eighth Amendment claim related to prison conditions against Defendants.

### 3. Finding of Guilt at Disciplinary Hearing

Dyal asserts that Defendant Cummings violated his Eighth Amendment rights by finding him guilty of a disciplinary violation. <u>See</u> Amended Complaint at 18. Plaintiff does not plead any facts to allege how Defendant Cummings violated his Eighth Amendment rights based on his

involvement in the disciplinary hearing. Therefore, Plaintiff has failed to state an Eighth Amendment claim related to the disciplinary hearing.

### C. First Amendment Retaliation

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." <u>Farrow v. West</u>, 320 F.3d 1235, 1248 (11th Cir. 2003). "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." <u>Smith v. Mosley</u>, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing <u>Farrow</u>, 320 F.3d at 1248). An inmate may maintain a cause of action for retaliation under 42 U.S.C. § 1983 by showing that a prison official's actions were "the result of [the prisoner] having filed a grievance concerning the conditions of his imprisonment." <u>Farrow</u>, 320 F.3d at 1248 (quotation marks omitted).

As relevant to this action, the Eleventh Circuit has set forth the standard applicable to a First Amendment retaliation case.

> To prove First Amendment retaliation, an inmate must show that: (1) his speech or act was constitutionally protected, (2) he suffered an adverse action from prison officials that would deter a person of ordinary firmness from engaging in the speech or act, and (3) the protected speech or act and adverse action were causally connected. <u>Smith v. Mosley</u>, 532 F.3d 1270, 1276 (11th Cir. 2008); <u>see</u> <u>Moton v. Cowart</u>, 631 F.3d 1337, 1342 (11th Cir. 2011) ("An inmate must establish ... 'his speech or act was constitutionally protected....'"). We've routinely held that a prisoner's complaints about prison conditions, via administrative grievances, lawsuits, and the like are protected under the First Amendment. <u>Smith</u>, 532 F.3d at 1276 (addressing grievances about the conditions of imprisonment); <u>Al-Amin v. Smith</u>, 511 F.3d 1317, 1333-34 (11th Cir. 2008)

(addressing a prison's opening of mail from attorneys outside the
inmate's presence).

Hollins v. Samuals, 540 F. App'x 937, 938–39 (11th Cir. 2013) (per curiam).

Notably, there must be a causal relationship between the retaliatory action and the protected speech. The Eleventh Circuit has addressed an inmate's claim for retaliation against prison officials in the disciplinary context as follows:

> If a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's fact finding,[12] the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report. Whether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel. In the particular circumstances here, [the plaintiff] has suffered adverse action (here 30 days' disciplinary confinement) because he actually violated the prison rules and not because of his earlier grievances. To find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction after having filed a grievance. Because he was guilty of the disciplinary charges resulting in the disciplinary harm at issue, [plaintiff]'s retaliation claim fails.

O'Bryant v. Finch, 637 F.3d 1207, 1215–16 (11th Cir. 2011) (per curiam) (footnote omitted). Thus, an inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after

---

12 See Wolff v. McDonnell, 418 U.S. 539 (1974); Superintendent v. Hill, 472 U.S. 445 (1985).

being afforded adequate due process. See id. at 1215. In other words, there is no causal connection between a DR and a prisoner's freedom of speech if the disciplinary action would have been taken regardless of the prisoner's protected speech. Id. at 1217 (citing Smith, 532 F.3d at 1278, n.22). In such circumstances, "[a]ny possible causal connection between the protected activity (the grievances) and the harm (the disciplinary charges and sanctions) is severed since the harm is not in reaction to any protected activity, but directly due to an improper activity." Id. at 1219–20.

## 1. Filing of Disciplinary Report

Dyal asserts that Officer Driggers retaliated against him for filing grievances and legal documents by filing a false disciplinary report. See Amended Complaint at 17-18. He states that on May 12, 2017, Defendant Driggers wrote a disciplinary report for Dyal's possession of a weapon. Id. On May 23, 2017, a disciplinary hearing was held and Officer Cummings found Dyal guilty of the alleged infraction. The basis for the decision was as follows:

> The team considered all available evidence rendering a decision to include all witness statements video evidence. Based upon review of the identified tape or the capabilities of the particular taping equipment, the tape requested does not provide evidence to support the inmate's statement. Inmate was found guilty based on the fact that Sgt. Driggers found a razor blade in the inmates locker and the inmate signed the DC 6-220. Inmate sentenced to 40 days DC minus 10 days AC credit for a total of 30 days DC in addition to 20 days loss of gain time. Inmate advised he had 15 days to appeal the decision of the team. Be advised that Sgt. Velez was present during the hearing for training purposes only and had no part in the deliberations by the team.

Id. at 71. Notably, Dyal does not allege that his due process rights were violated during the disciplinary proceedings. Accordingly, Dyal has failed to state a claim of retaliation against Defendant Driggers for the filing of the disciplinary report. See Halliburton v. O'Bryan, Case No. 5:15-cv-14-RS-GRJ, 2015 WL 5468670, at *2 (N.D. Fla. May 12, 2015) (noting that an inmate cannot state a retaliation claim for a disciplinary charge where the inmate is convicted of the

underlying behavior after being afforded due process) (citing O'Bryant, 637 F.3d at 1215)); Report and Recommendation adopted by Halliburton v. O'Bryan, Case. No. 5:15-cv-14-RH-GRJ, 2015 WL 5468695 (N.D. Fla. Sept. 16, 2015).

### 2. Verbal Threats and Search of Property

Dyal asserts that Officer Eining verbally threatened him after noticing his grievance forms and legal work during a May 11, 2017 search of his property. See Amended Complaint at 14, 61. According to Dyal, Eining told him "that the officers and staff members of Marion Work Camp did not tolerate those who wrote grievances." Id. at 61. Dyal further contends that Officer Eining's threats lead to another search of his property on the following day.

On May 12, 2017, Defendants Law, Driggers, and Lee searched Dyal's property. Id. at 14-15. Dyal states that this search was in retaliation for his writing and filing grievances and legal documents. Id. A causal connection may be alleged by setting out a chronology of events that creates a plausible inference of retaliation.[13] Dyal claimed that he was threatened after grievances and legal work were found during the May 11, 2017 search, and then Defendants searched his belongings again on May 12, 2017. Therefore, Dyal has pled "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. As such, the Joint Motion and the Lee Motion are due to be denied as to Dyal's claims of retaliatory verbal threats by Officer Eining and the May 12, 2017 property search.

Dyal also claims that on May 23, 2017, Defendant Cummings retaliated against him with threats of transfer for filing grievances and legal work against officials at MCI. Amended

---

[13] See Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 911 (11th Cir. 2010) (citing Cain v. Lane, 857 F.2d 1139, 1141-43 (7th Cir. 1988) (noting that not every disciplined prisoner who has filed a lawsuit will state claim of retaliation and that the prisoner "must allege a chronology of events which retaliation may plausibly be inferred")).

Complaint at 18. While an inmate does not have a constitutionally protected liberty interest against being transferred to a less agreeable prison, Moody v. Daggett, 429 U.S. 78, 88 (1976), prison officials may not transfer an inmate in retaliation for exercising his right to file grievances against prison officials. Bridges v. Russell, 757 F.2d 1155, 1157 (11th Cir. 1985). Such retaliatory transfers violate an inmate's First Amendment rights. Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989). Where allegations of threats are at issue, under the First Amendment the question is not whether the threat was actually carried out, "but whether the alleged threat itself was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." Pittman v. Tucker, 213 F. App'x. 867, 871 (11th Cir. 2007). At this juncture, given Dyal's factual assertions, he has pled "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Therefore, the Joint Motion is due to be denied as to Dyal's claim of threats of transfer against Defendant Cummings, and the parties will be given an opportunity to further develop the facts.

### 3. Confiscation of Grievances, Legal Work, and Religious Materials

Dyal also asserts that during the May 12, 2017 search, Defendants Law, Driggers, and Lee confiscated his legal work, grievances, and religious items in retaliation for his writing of grievances. See Amended Complaint at 14, 17, 20, 24. Attached to his Amended Complaint is a copy of the Inmate Impounded Personal Property List (DC6-220). Id. at 73. The property list was created after the May 12th search. Id. Dyal signed the property list acknowledging that it "is a true listing of all personal property taken from me." Id.  The list of confiscated items did not include any grievances, legal work, or religious items. Id. Therefore, Dyal has failed to state a claim for

the alleged retaliatory confiscation of grievances, legal work, and religious materials against Defendants Law, Driggers, and Lee.[14]

## D. Denial of Access to Courts

Dyal alleges that he was denied access to the courts in violation of his "First, Fifth and Fourteenth Amendment Civil Rights." See Amended Complaint at 16-17. It is well-established that inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977); see also Chappell v. Rich, 340 F.3d 1279, 1282 (11th Cir. 2003) ("Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment."). To state a claim for denial of access to the courts, a plaintiff must allege an actual injury. Lewis v. Casey, 518 U.S. 343, 349-50 (1996); Barbour v. Haley, 471 F.3d 1222, 1225 (11th Cir. 2006). "Actual injury may be established by demonstrating that an inmate's efforts to pursue a nonfrivolous claim were frustrated or impeded by...an official's action." Barbour, 471 F.3d at 1225 (citations omitted). Therefore, "the plaintiff must identify within his complaint, a 'nonfrivolous, arguable underlying claim.'" Id. at 1226 (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)). Additionally, the plaintiff must show that the underlying nonfrivolous claim was raised, or would have been raised, in connection with a direct appeal, a collateral attack on his conviction, or a civil rights action. Lewis, 518 U.S. at 354-57; Cranford v. Nev. Dep't of Corr., 398 F. App'x 540, 546-47 (11th Cir. 2010).

---

[14] The Court may consider the attachments to Dyal's Amended Complaint, as well as whether they contradict his allegations. Under Fed. R. Civ. P. 10(c), the attachments are part of the pleading for all purposes, including a Rule 12(b)(6) motion. Where "the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." Griffin Industries, Inc. v. Irvin, 496 F.3d 1189, 1205, 1206 (11th Cir. 2007).

Here, Dyal does not identify any nonfrivolous, arguable underlying claims that were frustrated or impeded due to the Defendants' alleged actions. Accordingly, Dyal has failed to adequately allege a legally-sufficient injury to state an access to courts claim against Defendants Law, Driggers, and Lee.

### E. Heck Bar

Defendants submit that the Court lacks subject matter jurisdiction over Dyal's claims surrounding the disciplinary hearing because those claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the United States Supreme Court held:

> [i]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck, 512 U.S. at 486-87 (internal citation and footnote omitted). The Court has applied the Heck analysis to actions brought by prisoners challenging disciplinary proceedings in jail. See Edwards v. Balisok, 520 U.S. 641, 647 (1997).

In Balisok, the plaintiff initiated a § 1983 action alleging defendants violated his due process rights during a disciplinary hearing, which resulted in plaintiff's loss of good time credits. Id. at 643. The Balisok Court concluded that a § 1983 action was not cognizable, even though the plaintiff was challenging the procedure and not the result, because a finding in favor of the plaintiff would "necessarily imply the invalidity of the punishment imposed." Id. at 648. As such, the Court

held that a prisoner could not pursue such an action unless the prisoner had successfully invalidated the disciplinary report. Id. at 646-48; see also Wilkinson v. Dotson, 544 U.S. 74 (2005) (finding a state prisoner's § 1983 action is barred - absent prior invalidation - no matter the relief sought - damages or equitable relief - no matter the target of the prisoner's suit - state action leading to conviction or internal prison proceedings - if success in that action would necessarily invalidate prisoner's confinement).

Here, a favorable judgment regarding Dyal's allegations that the disciplinary report filed against him was false and the finding of guilt violated his Eighth Amendment rights would call into question the validity of the disciplinary conviction. Further, Dyal's claim that his disciplinary confinement and loss of gain time constituted cruel and unusual punishment would also call into question the validity of the disciplinary conviction. Thus, these claims are barred by the Heck doctrine. Accordingly, Dyal's Eighth Amendment claims against Defendants Driggers and Cummings are barred by Heck.[15]

In consideration of the foregoing, it is now

**ORDERED:**

1.     Defendants' Eining, Cummings, Law, and Driggers' Joint Motion to Dismiss (Doc. 32) is **PARTIALLY GRANTED** as to Dyal's First Amendment retaliation claim against Defendant Driggers related to the filing of the disciplinary report; Dyal's First Amendment retaliation claims against Defendants Law and Driggers related to the alleged confiscation of grievances, legal work, and religious materials; Dyal's access to courts claims against Defendants

---

[15] On November 30, 2018, Dyal filed a motion titled "Motion to Set Aside Portions of Claim that Fall under "Heck" Doctrine. (Doc. 62). Dyal requests that "this court set aside portions or claims of this case that are directly related to the validity of this said disciplinary report and hearing." Id. at 3. Because Dyal's claims are subject to the Heck bar, are not cognizable under § 1983, and are due to be dismissed without prejudice, his motion is due to be denied as moot.

Law and Driggers; Dyal's Eighth Amendment prison conditions claims; Dyal's Eighth Amendment claim against Defendant Cummings related to the finding of guilt at the disciplinary hearing; and Dyal's Eighth Amendment claims regarding the punishment he received as a result of the disciplinary conviction. Otherwise, the Joint Motion is **DENIED**.

2.     Defendant Lee's Motion to Dismiss (Doc. 58) is **PARTIALLY GRANTED** as to Dyal's First Amendment retaliation claims related to the alleged confiscation of grievances, legal work, and religious materials; Dyal's access to courts claim; Dyal's Eighth Amendment excessive use of force claim; and Dyal's Eighth Amendment prison conditions claims. Otherwise, the Lee Motion is **DENIED**.

3.     Dyal's Motion to Set Aside Portions of Claim that Fall under Heck Doctrine (Doc. 62) is **DENIED** as moot.

4.     **No later than April 15, 2019**, Defendants must answer or otherwise respond to the claims remaining in the Amended Complaint.

**DONE AND ORDERED** in Chambers this 21st day of March, 2019.

MARCIA MORALES HOWARD
United States District Judge

c:
Christopher Dyal, FDOC #958733
Counsel of Record